

**IT IS ORDERED as set forth below:**

**Date: December 18, 2017**

_____
**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| PATRICIA LOUISE WOODLEY, | CASE NO. 17-53630-BEM |
| Debtor. | |
| | CHAPTER 13 |
| ENCORE ASSETS, LLC, | |
| Objecting party, | Contested Matter |
| v. | |
| PATRICIA LOUISE WOODLEY, | |
| Respondent. | |

**ORDER OVERRULING OBJECTIONS TO CONFIRMATION AND CONFIRMING
CHAPTER 13 PLAN**

This matter came before the Court on September 19, 2017, for a hearing on confirmation of Debtor's Amended Chapter 13 Plan [Doc. 28] (the "Plan") and the Objection to Confirmation of Plan by Encore Assets, LLC [Doc. 23] (the "Objection"). The Court took the matter under

advisement and asked the parties to submit stipulations of fact. The parties submitted Stipulated Facts [Doc. 34] on October 2, 2017. For the reasons below, the Court overrules the objection filed by Encore Assets, LLC ("Encore"), and confirms the Plan.

## I. Stipulated Facts

Encore was the highest bidder at a March 1, 2016, tax sale of 832 Boston Common, College Park, Georgia ("Property") and took title to the Property by way of a tax deed that was executed and delivered by the Sherriff on March 1, 2016, and recorded on March 14, 2016. [Stipulated Facts ¶ 1].

Pursuant to O.C.G.A § 48–4–40, upon the sale of the Property, the Debtor "or any person having any right, title, or interest in or lien upon such property," were granted the right to "redeem the property from the sale by the payment of the redemption price or the amount required for redemption, as fixed and provided in Code Section 48–4–42" until the latter of 12 months from the date of sale or "until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48–4–45." [Stipulated Facts ¶ 2].

Patricia Louise Woodley ("Debtor") initiated the instant Chapter 13 bankruptcy case by the filing of her voluntary petition on February 28, 2017, less than 12 months after the Property was sold to Encore at the tax sale. [Stipulated Facts ¶ 3].

The redemption price set by O.C.G.A. § 48–4–42 as of the petition date was $19,200 and is currently $20,800 (the "Redemption Price"). Debtor and Encore believe that the redemption price identified in Woodley's most recent amendments to her bankruptcy petition are an accurate estimate of what the redemption price would be if the right of redemption were not extinguished prior to March 1, 2020. However, both parties acknowledge that, since such estimate includes

2

assumptions as to the amount of property taxes that will be assessed in future years, the actual amount of the redemption price is subject to change. [Stipulated Facts ¶ 4].

Pursuant to Georgia law, upon purchase of the property at the March 1, 2017, tax sale, Encore became liable for payment of any property taxes or other charges properly assessed against the owner of the Property and is subject to the same consequences as the owner of any other property for failure to pay those charges, including losing title to the property by way of tax sale. [Stipulated Facts ¶ 5].

Upon payment of the Redemption Price, O.C.G.A. § 48–4–44 would require Encore to make a quitclaim deed to Debtor, which, pursuant to O.C.G.A. § 48–4–43, would have the effect of transferring the title conveyed by the tax sale back to Debtor, subject to all liens existing at the time of the tax sale. [Stipulated Facts ¶ 6].

At the time of the March 1, 2016, tax sale, Deutsche Bank was the holder of a first priority security deed on the Property estimated by Debtor to be $40,000. [Stipulated Facts ¶ 7]. Deutsche Bank's status as the holder of a secured lien on the Property was terminated by the March 1, 2016, tax sale. In addition to being one of the parties authorized to redeem the Property pursuant to O.C.G.A § 48–4–40, Deutsche Bank became one of Woodley's unsecured creditors. [Stipulated Facts ¶ 8]. Upon payment of the Redemption Price by Woodley, Deutsche Bank's first priority lien on the Property will be revived and it will once again be a secured creditor. [Stipulated Facts ¶ 9].

## II.    Plan Provision at Issue & Encore's Objection

The Plan designates Encore as holding a claim secured by the Property. Debtor proposes to pay the Redemption Price through the Plan in monthly installments. Under the Plan, Debtor

3

would pay $650 per month towards the Redemption Price until August 1, 2018, at which point the monthly installment amount increases to $950.

Encore objects to Debtor's attempt to redeem the Property through a Chapter 13 plan. Encore asserts that it became the owner of the Property after the tax sale, with Debtor retaining only a right to redeem the Property. As a result, according to Encore, only the right to redeem—not the Property—entered Debtor's bankruptcy estate. Encore further asserts that the Plan does not propose a permissible adjustment of a secured claim under § 1322 because Encore does not hold a "claim" as defined by the Bankruptcy Code. Rather, Encore argues, the Plan proposes an impermissible repurchase of the Property from Encore. *See* Objection ¶¶ 2, 3, 5.

### III.     Prior Decisions from the Northern District of Georgia

The issue before the Court, stated broadly, is whether a Chapter 13 plan may provide for redemption of real property sold in a tax sale. Four bankruptcy judges and one District Court judge in the Northern District of Georgia have addressed this issue. *See Francis v. Scorpion Grp. LLC (In re Francis)*, 489 B.R. 262 (Bankr. N.D. Ga. 2013) (Hagenau, J.)[1]; *Harvest Assets, LLC v. Edwards (In re Edwards)*, 2014 Bankr. LEXIS 5432 (Bankr. N.D. Ga. 2014) (Mullins, J.)[2]; *In re Jimerson*, 564 B.R. 430 (Bankr. N.D. Ga. 2017) (Baisier, J)[3]; *In re Alexander*, 2017 WL 5450248 (Bankr. N.D. Ga. 2017) (Diehl, J.)[4]; *Callaway v. Harvest Assets, LLC (In re Callaway)*, Case No. 1:15-CV-570-ODE, 2015 U.S. Dist. LEXIS 185160 (N.D. Ga. Oct. 30, 2015) (Evans, J.). Additionally, an appeal of Judge Baisier's decision in *In re Jimerson* is currently pending in the District Court. *See Deed Co, LLC v. Jimerson (In re Jimerson)*, Case No. 1:17-cv-513-WSD (Duffey, J.).

---

[1] Case No. 12-73183, Doc. 95 (Mar. 13, 2013).
[2] Case No. 14-51366, Doc. 35 (Nov. 13, 2014).
[3] Case No. 16-60838, Doc. 49 (Jan. 26, 2017).
[4] Case No. 17-63938, Doc. 23 (Nov. 13, 2017).

4

The judges in this district are split on whether a Chapter 13 debtor can redeem real property sold in a tax sale through a Chapter 13 plan. The split in this district is characteristic of a broader split across the country on the same issue. Several courts have commented—and this Court agrees—that the issue is a close one. *See, e.g.*, *In re Callaway*, 2015 U.S. Dist. LEXIS 185160, at *15 (noting a "close question"); *In re Gonzalez*, 550 B.R. 711 (Bankr. E.D. Pa. May 19, 2016) ("The issue is a close one.").

The judges in this district holding that a debtor cannot redeem through a Chapter 13 plan property sold in a tax sale reason that only the redemption right—not the real property itself—enters the bankruptcy estate; that § 1322 cannot be used to extend the state law redemption period, as § 108(b) speaks directly to the extension of non-bankruptcy deadlines; and that there exists no "claim" secured by any estate property that can be modified under § 1322. *See generally In re Edwards*, 2014 Bankr. LEXIS, at *6–23; *In re Callaway*, 2015 U.S. Dist. LEXIS 185160, at *12–14.

The judges holding that a Chapter 13 debtor may redeem the property through a plan have done so after concluding that the real property itself enters the bankruptcy estate and that the purchaser holds a "claim" subject to modification in a Chapter 13 plan. Those judges reason that that parties' relationship is nearly identical to that between a security deed holder and the homeowner who grants the security deed. *See, e.g.*, *In re Francis*, 489 B.R. at 266; *In re Jimerson*, 564 B.R. at 435–36, 437, 438; *In re Alexander*, 2017 WL 5450248, at *3, *4.

**IV.   Analysis**

This Court concurs that this matter is a close one. The difficulty lies in how to characterize the property interest transferred in a tax deed and how to characterize the legal relationship between the debtor-taxpayer and the tax sale purchaser. As further explained below,

5

however, the Court concludes that the Property became estate property when Debtor filed her Chapter 13 petition, and that Encore holds a claim equal to the Redemption Price that Debtor can pay through her Chapter 13 plan.

**A.  Debtor Owns the Property Under Georgia Law. The Property, Therefore, Entered the Estate.**

The *Edwards* and *Callaway* opinions concluded that real property sold in a tax sale does not enter the estate.[5] As noted in the *Jimerson* and *Alexander* opinions, *Edwards* and *Callaway* did not address the many rights remaining in a delinquent taxpayer after a tax sale, focusing primarily on redemption rights.[6]

The *Jimerson*, *Alexander*, and *Francis*, opinions concluded that the real property (or the "bundle of rights" that comprise real property ownership) became estate property. Those opinions analogized the property rights remaining after a tax sale to the property rights remaining after the grant of a security deed, which are nearly identical to each other. The grantor of a security deed unquestionably remains the owner of the property; real property subject to a

---

[5] *In re Edwards*, 2014 Bankr. LEXIS, at *6 ("Under Georgia law, the record owner loses title to the property but retains certain interests in the property, including the right to possession and the right of redemption, for a limited period of time. Because the record owner no longer has title to the tax sale property, it does not become part of the bankruptcy estate if the owner files bankruptcy. The right to redeem the real property sold at the tax sale, however, does become part of the bankruptcy estate"); *In re Callaway*, 2015 U.S. Dist. LEXIS 185160, at *12 ("First, Appellant had only a right to redemption in the Property at the time that he filed for bankruptcy, as title to the Property passed when Harvest purchased the tax deed.").

[6] *In re Alexander*, 2017 WL 5450248, at *4 ("Like WCR's arguments, the courts in *Edward* and *Callaway* also only recognized the Right of Redemption as being possessed by the debtor; neither case addressed the other rights that were retained by the debtor on each's petition date. Neither WCR nor the courts in *Edwards* or *Callaway* gave any explanation for this absence. As discussed above, however, these other rights in the 'bundle' possessed by the Debtor on the Petition Date are crucial to the analysis.") (citations omitted); *In re Jimerson*, 564 B.R. at 437 n.17 ("The courts in *Edwards* and *Callaway* began their analyses by acknowledging that the tax deed holder possessed legal title and the debtor possessed a right of redemption. Both then ignored the debtor's other rights, and focused the analysis solely on the right to redeem. But … the Debtor in this case possesses more than just the Right of Redemption.") (citations omitted).

6

security deed unquestionably becomes estate property in a grantor's bankruptcy case. Real property subject to a tax deed, the argument goes, should also be included the bankruptcy estate.[7]

The similarities between tax deeds and security deeds in terms of property interests, rights, and obligations invite the obvious analogy between the two. For both tax deeds and security deeds, the title obtained is less than full and is subject to (or can be "defeated" by) redemption rights.[8] And as noted in *Alexander*, *Jimerson*, and *Francis*, neither tax deeds nor security deeds transfer the bundle of rights that comprise what is typically understood as property

---

[7] *In re Alexander*, 2017 WL 5450248, at *3, *4 ("[T]here are other factors to consider in determining property of the estate beyond legal title. Aside from legal title and the Right of Redemption, there are other rights possessed by the 'former owner' including, inter alia, the rights of possession, use, profits, and the ability to exclude others. This is very similar to a deed to secure debt in Georgia, under which a mortgagor holds legal title, but the borrower otherwise possesses and retains all other rights to the property. In cases with a deed to secure debt, there is no doubt that the subject property is property of the estate, even in spite of the debtor not holding legal title. This is equally true in the context of a tax sale redemption prior to the expiration of the Right of Redemption. … Just like a borrower under a deed to secure debt, on the Petition Date, the Debtor in this case possessed all the rights to the property except legal title. In light of the foregoing, this Court finds that the Property is property of this Debtor's Chapter 13 estate.") (citations omitted); *In re Jimerson*, 564 B.R. at 436, 437 ("[U]nder a deed to secure debt in Georgia, the borrower does not hold legal title to the property, but nonetheless that property is unquestionably property of the borrower's bankruptcy estate because the borrower possesses the rest of the 'bundle of rights' that constitute ownership. … [P]roperty subject to a security deed would, without a doubt, be considered property of the estate. Bearing in mind all of the rights in the Property that the Debtor possessed on the Petition Date, this Court finds that the Property is property of this Debtor's Chapter 13 estate.") (footnotes omitted); *In re Francis*, 489 B.R. at 266 ("Scorpion emphasizes it already holds legal title to the Property as a result of the tax sale and therefore the Property is not property of the estate. Holding legal title is an important factor, but not the determinative factor as to whether the Property or any interest therein is property of the estate. For example, the holder of a security deed in Georgia holds legal title to the property. The interest retained by the grantor is an equitable title with a right of redemption, much like an owner after a tax sale. Courts consistently view property subject to a security deed as property of the estate and the legal title holder as the holder of a claim.") (citations omitted).

[8] *Compare Brown Inv. Grp., LLC v. Mayor & Aldermen of City of Savannah*, 289 Ga. 67, 68, 709 S.E.2d 214, 216 (2011) ("[T]he title acquired by the purchaser of a tax deed is 'not a perfect fee simple title, but rather an inchoate or defeasible title subject to the right of redemption.'"), *and Whitaker Acres, Inc. v. Schrenk*, 170 Ga. App. 238, 240, 316 S.E.2d 537, 539 (1984) ("The nature of the title which [a tax sale purchaser] has may be compared to an estate which will ripen upon a condition, or rather perhaps to one which will be defeated upon the happening of a condition. In either event, it is not a perfect title, but one subject to the right of redemption."), *with Citizens' & S. Bank v. Realty Sav. & Tr.*, 167 Ga. 170, 144 S.E. 893, 895 (1928) (A security deed "will vest legal title to the land in the grantee and his assigns, subject to be defeated by payment of the debt. The grantor in such a deed retains the right of possession and the right of redemption by payment of the debt."), *and Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.*, 298 Ga. 221, 235, 780 S.E.2d 311, 324 (2015) ("According to Georgia law, a deed to land for the purpose of securing a debt passes legal title to the lender. Such a deed does not, however, transfer equitable title. That is, the lender does not gain complete title over the property unless and until it forecloses thereon. Therefore, the fact that the lender holds a security deed does not mean the debtor is completely divested of title.").

7

ownership—the rights of possession, use, profits, exclusion of others. *See In re Alexander*, 2017 WL 5450248, at *3; *In re Jimerson*, 564 B.R. 435–36; *In re Francis*, 489 B.R. at 66–67.

But the differences between tax deeds and security deeds, although likely irrelevant to a debtor trying to keep a house, are arguably relevant in bankruptcy, and are clearly relevant to the tax sale purchaser. Tax sale purchasers—not the delinquent tax payers—are liable for property taxes, as well as for any homeowners association assessments. *E.g.*, *Ballard v. Newton Cty. Bd. of Tax Assessors*, 332 Ga. App. 521, 524 n.1, 773 S.E.2d 780, 783 n.1 (2015) (property taxes); *Croft v. Fairfield Plantation Prop. Owners Ass'n, Inc.*, 276 Ga. App. 311, 314, 623 S.E.2d 531, 533 (2005) (homeowners association assessments).[9] Moreover, tax sale purchasers transfer money for the purpose of owning real estate, not for making a loan. As Judge Mullins explained in *In re Edwards*, "A mortgage is a creature of contract while a right to redeem is a statutory right that, if exercised, allows a taxpayer to repurchase property sold at a tax sale. While a mortgagee generally agrees to accept a stream of payments, a tax sale purchaser does not. Rather, when purchasing real property at a tax sale, a purchaser expects to receive a single lump sum payment within a year, if it receives any payment at all." *In re Edwards*, 2014 Bankr. LEXIS 5432, at *12.

Fortunately, the Court need not resolve the issue of who "owns" property sold at a tax sale, because the Georgia appellate courts already have. In *Brown Investment Group, LLC v. Mayor & Aldermen of City of Savannah,* 303 Ga. App. 885, 695 S.E.2d 331 (2010), *aff'd* 289 Ga. 67, 709 S.E.2d 214 (2011), a tax sale purchaser sued for trespass and damages that occurred to property purchased at a tax sale while the right to redeem still existed. The Court of Appeals affirmed a summary judgment ruling that the purchaser lacked standing, reasoning that the

---

[9] But any amounts paid by tax sale purchaser for property taxes and to property owners' associations are included in the redemption price. *See* OCGA § 48–4–42(a)(1), (c)(3).

8

purchaser was not the legal owner of the property because the tax sale did not convey legal title, which remained with the delinquent taxpayers under their right of redemption:

> Brown Investment [the purchaser] lacked standing to sue the City for trespass or the value of the destroyed building because *it was not the legal owner* and had no right to possession of the real property when the building was demolished. … The August 1, 2006 tax deed acquired by Brown Investment at the tax sale of the property *did not convey legal title to the property*; rather it conveyed an inchoate or defeasible title ….
> …
> While the right to redeem the property existed, Brown Investment's title under the tax deed was subordinated to this right; *the defendants in fi. fa. retained their title to the property*; and Brown Investment had no right to actual or constructive possession of the property. *Assuming the defendants in fi. fa. held legal title to the property before the August 1, 2006 tax deed, they retained their title under the right of redemption* at the time of the demolition on July 25, 2007, and they possess standing to assert a cause of action to recover the value of the demolished building.

*Brown Inv. Grp.*, 303 Ga. App. at 886, 695 S.E.2d at 331, 332 (emphasis added) (citation and internal quotation marks omitted).

The Supreme Court of Georgia affirmed, stating in equally clear terms that the delinquent taxpayer continues to own the property until the redemption right terminates: "The owner, or defendant in fi. fa., is the one who is entitled either to rent or possession during the period allowed for redemption. Until the expiration of that period which the law fixes for the defendant in fi. fa. to exercise his right to redeem, *his title as owner is not divested*. He is the one who has standing to sue for a trespass which occurs during this period. … Accordingly, the Court of Appeals correctly held that … Brown does not have 'standing to sue the City for trespass or the value of the destroyed building because it was not the legal owner and had no right to possession of the real property when the building was demolished.'" *Brown Inv. Grp.*, 289 Ga. at 69, 709 S.E. 2d at 216 (emphasis added and internal quotation marks omitted) (quoting *Brown Inv. Grp.*, 393 Ga. App. at 886, 695 S.E.2d at 332).

9

Given the above authority, and given Debtor's redemption rights never terminated, Debtor remains the owner of the Property. The Property, therefore, is property of Debtor's bankruptcy estate.

### B. Encore Holds a Secured Claim.

The Bankruptcy Code defines "claim" as a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment," whether or not the right to payment or an equitable remedy "is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A)–(B). Additionally, "'claim against the debtor' includes claim against property of the debtor." 11 U.S.C. § 102(2).

The U.S. Supreme Court in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S. Ct. 2150 (1991), stated that in enacting § 101(5), "Congress intended … to adopt the broadest available definition of 'claim'" and Congress intended "that § 102(2) extend to all interests having the relevant attributes of nonrecourse obligations regardless of how these interests come into existence." *Johnson*, 501 U.S. at 83, 87, 111 S. Ct. at 2154, 2155. Against that backdrop, the Supreme Court in *Johnson* held that a mortgage holder has a claim against a Chapter 13 debtor-homeowner whose personal liability on the mortgage has been discharged. *Id.* at 80, 111 S. Ct. at 2152. Despite the debtor's lack of liability—and the lack of a right to payment from the debtor—the Supreme Court stated the mortgagee "retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property." *Id.* at 84, 111 S. Ct. at 2154. "Alternatively," the Supreme Court continued, the "right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation." *Id.*, 111 S. Ct. at 2154.

Analogizing to the non-recourse mortgage in *Johnson*, the courts in *Alexander*, *Jimerson*, and *Scorpion* concluded that a tax deed holder holds a "claim" for bankruptcy purposes. *In re Alexander*, 2017 WL 5450248, at *5 ("[T]he interest possessed by a non-recourse mortgagee is almost identical to the interest that a tax sale purchaser possesses."); *In re Francis*, 489 B.R. at 268 ("The Debtor is in much the same position as the owner of property subject to a non-recourse lien. Even if the Debtor is not personally liable to Scorpion in a civil proceeding, the Debtor's underlying obligation remains enforceable against her property. Consequently, Scorpion holds a claim for the Debtor's equitable interest remaining in the Property, including her right to use it and to possess it, or the monetary value thereof (the redemption price)."); *In re Jimerson*, 564 B.R. at 438 (adopting the reasoning from *In re Francis*).

The analogy to non-recourse mortgages is compelling, but even more so in Georgia, where the usual method of financing the purchase of real estate is granting a deed to secure debt. As previously discussed, security deeds and tax deeds provide nearly identical rights; the holder of a non-recourse security deed unquestionably holds a claim in bankruptcy under *Johnson*.

Additional reasons militate in favor of concluding Encore holds a secured claim in this case. First, including *Johnson*, the U.S. Supreme Court has consistently taken a broad and flexible view of what constitutes a "claim," giving effect to Congress's intent in defining "claim." In *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 110 S. Ct. 2126 (1990), the Supreme Court held that a welfare fraud restitution obligation imposed as a probation condition constitutes a "claim," despite being unenforceable in any civil proceeding. A right to payment existed despite the lack of a civil enforcement mechanism because "the obligation [was] enforceable by the substantial threat of revocation of probation and incarceration." *Id.* at 559, 110 S. Ct. at 2131. In *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017), the Supreme

11

Court stated that a right to payment is a "claim" even if the right to payment is unenforceable. The Court reasoned, "The word 'enforceable' does not appear in the Code's definition of 'claim.'" *Id.* at 1412. In *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 123 S. Ct. 832 (2003), the Supreme Court held that a payment obligation imposed as a regulatory licensing condition constitutes a claim. The Court rejected the argument that "the 'financial nature of a condition' on a license 'does not convert that condition into a debt,'" noting that "a debt is a debt, even when the obligation to pay it is also a regulatory condition. *Id.* at 303, 123 S. Ct. at 839. This Court will follow the Supreme Court's direction and construe "claim" broadly and flexibly.

Second, Encore's interest in the Property can be characterized as a secured claim even without analogizing to non-recourse mortgages. Encore holds a claim because it is entitled to payment of the Redemption Price or to foreclose Debtor's redemption rights and acquire Debtor's interest in the Property. The contingent nature of Encore's rights is irrelevant because the definition of "claim" includes contingent obligations. *E.g.*, *In re Pittman*, 549 B.R. 614, 628 (Bankr. E.D. Pa. 2016) (The Bankruptcy Code does not "place[] any limitation on the concept of a 'contingent' right to payment, and the fact that the Debtor is in control of the contingency here is of no moment.") Also irrelevant is Encore's desire for the Property rather than for the Redemption Price. Encore is entitled to one or the other, at Debtor's election, and the right to payment exists even if Encore does not want it and has no say in what it will ultimately receive.

Further, the claim is secured because Encore's interest in the Property constitutes a "lien" as defined in 11 U.S.C. § 101(37). A "lien" is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). "[W]hat the tax sale purchaser receives is not fee simple title, but rather a *defeasible fee interest* evidenced by

12

a tax deed." *Ballard v. Newton Cty. Bd. of Tax Assessors*, 332 Ga. App. 521, 524–25, 773 S.E.2d 780, 783 (2015) (emphasis in original). That defeasible fee interest secures Encore's claim—eventually, Encore will get either the Redemption Price or Debtor's interest in the Property.

Third, a conclusion that Encore holds a secured claim is consistent with Georgia policy in construing the redemption statutes to favor the ability to redeem. "[T]he enforcement and collection of taxes through the sale of the taxpayer's property has been regarded as a harsh procedure, and, therefore, the policy has been to favor the rights of the property owner in the interpretation of such laws. Since the policy has been to favor the property owner[,] provisions permitting the owner to redeem his property are liberally construed to accomplish their objectives." *Id.* (quoting *Reliance Equities, LLC v. Lanier 5, LLC*, 299 Ga. 891, 894, 792 S.E.2d 680, 682 (2016)) (second alteration in original); *see also H & C Dev., Inc. v. Bershader*, 248 Ga. App. 546, 548, 546 S.E.2d 907, 908–09 (2001) ("It is well settled that because the forfeiture of the right of redemption is so harsh, the law favors the redeeming property owner. As such, the '[l]aws of this state governing the right to redeem are to be construed liberally and most favorably to persons allowed by the statute to redeem.'") (quoting *Dixon v. Conway*, 262 Ga. 709, 709, 425 S.E.2d 651, 652 (1993)) (citation omitted).

Finally, the threat of losing the Property can be viewed as a mechanism by which Encore's right to payment is enforced. "This enforcement mechanism makes redemption payments comparable to restitution payments and license fees as all three obligations are enforced by the threat of the loss of a valuable right or asset." *In re Pittman*, 549 B.R. at 629 n.12; *see also Philadelphia v. Minor (In re Minor)*, No. 13-19278, 2016 WL 1256286, at *12 (E.D. Pa. Mar. 30, 2016) ("The Supreme Court has held that criminal restitution is a claim under the Code because it is an obligation that can be enforced by the threat of probation and

13

incarceration. Debtor similarly has an obligation to pay the redemption price, which is enforceable by the threat of absolute title vesting in Good Bet. This claim is therefore secured by Good Bet's interest in the property, as if Debtor does not comply with his obligation to pay the redemption price, the obligation is enforceable against his property.") (footnotes omitted).

### C.     Debtor Can Pay Encore's Secured Claim Through the Plan.

The Plan provides for payment of Encore's claim in full while modifying Encore's state law right to timely receive a lump sum payment of the Redemption Price or else be able to foreclose Debtor's redemption rights. Generally, the rights of secured claimholders can be modified under § 1322(b)(2), unless the claim is secured by the debtor's principal residence. The Property is not Debtor's principal residence. Encore's rights, therefore, can be modified in the Plan, subject to the limitations in § 1325(a)(5) for the treatment of secured claims. Payment of the full amount owed to Encore clearly satisfies § 1325(a)(5). The Plan, therefore, does not impermissibly modify Encore's rights.

The Court notes that this case does not present any issue under § 108(b). Section 108(b) states in part that "if applicable nonbankruptcy law … fixes a period within which the debtor … may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition," the act may be performed up until the later of the end of the period or 60 days after the petition date.

Some courts—including the courts in *Edwards* and *Callaway*—have held that § 108(b) is the relevant statute for extending or modifying redemption deadlines, and that § 1322(b)(2) cannot modify rights beyond what § 108(b) authorizes. *See In re Edwards*, 2014 Bankr. LEXIS 5432, at *17–18; *In re Callaway*, 2015 U.S. Dist. LEXIS 185160, at *12–14. Other courts—including the Courts in *Alexander*, *Jimerson*, and *Francis*—have held that § 108(b) does not

14

limit the applicability of other Code provisions, including § 1322(b)(2). *See In re Alexander*, 2017 WL 5450248, at *7–8; *In re Jimerson*, 564 B.R. at 441; *In re Francis*, 489 B.R. at 269.

The Court need not decide in this case whether § 1322(b)(2) or § 108(b) controls. Encore never issued a notice of foreclosure of redemption rights, so no deadline was ever set. With no deadline set, there was no deadline for § 108(b) to extend.[10]

## V.   Conclusion

For the forgoing reasons, it is hereby

**ORDERED** that Encore Assets, LLC's objection to confirmation is overruled. It is further

**ORDERED** that Debtor's Chapter 13 plan is confirmed. It is further

**ORDERED** that Property of the estate shall not revest in Debtor until the earlier of discharge of Debtor, dismissal of the case, or closing of case without the entry of a discharge, unless the Court orders otherwise. It is further

---

[10] The only time limitations on redemption rights are those set out in a tax sale purchaser's notice of foreclosure. *See* O.C.G.A. § 48–4–40 (redemption is available "[a]t any time within 12 months from the date of the sale" and "[a]t any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48–4–45."). Redemption rights can, however, be lost by operation of O.C.G.A. § 48–4–48, which provides that tax deeds executed on or after July 1, 1996, "shall ripen by prescription after a period of four years from the recordation of that deed" and "[n]otice of the foreclosure of the right to redeem … shall not be required to have been provided in order for the title to such property to have ripened." O.C.G.A. § 48–4–48(b), (d).

Section 48–4–48 does not apply in this case, despite the Plan having a 60-month applicable commitment period. A tax deed ripening by prescription requires adverse possession for four years, not merely the passage of four years. *Washington v. McKibbon Hotel Grp., Inc.*, 284 Ga. 262, 264, 664 S.E.2d 201, 203 (2008) (citations omitted) ("In order for a tax deed title to ripen by prescription into fee simple title, the plain language of OCGA § 48–4–48(b) requires adverse possession …. [I]t is mandatory that possession … 'be public, continuous, exclusive, uninterrupted, and peaceable[.]'") (quoting O.C.G.A. § 44–5–161); *Mark Turner Properties, Inc. v. Evans*, 274 Ga. 547, 549, 554 S.E.2d 492, 494 (2001) ("[C]ontrary to … the trial court's order, OCGA § 48–4–48 is not a statute of repose which operates to foreclose the right of redemption upon the mere passage of time."). Encore has not asserted possession of the Property, and Debtor's (uncontested) position at the confirmation hearing is that her daughter resides in the Property and pays rent to Debtor.

**ORDERED** that a creditor must have a proof of claim filed with the Clerk of Court in order to receive a distribution under Debtor's plan, without regard to any other provision of the plan. It is further

**ORDERED** that attorney fees for Debtor's counsel provided for in the Chapter 13 plan and disclosed in the disclosure statement required by Federal Rule of Bankruptcy Procedure 2016(b) are allowed as an administrative expense, subject to disgorgement or disallowance upon request of any party in interest or *sua sponte* by the Court. It is further

**ORDERED** that because no party in interest has filed a request for an order of dismissal pursuant to 11 U.S.C. § 521(i)(2) and because the parties in interest should not be subjected to any uncertainty as to whether this case is subject to automatic dismissal under § 521(i)(1), Debtor is not required to file any further document pursuant to § 521(a)(1)(B) to avoid an automatic dismissal and this case is not and was not subject to automatic dismissal under § 521(i)(1). This does not prevent any party in interest from requesting by motion that Debtor supply further information described in § 521(a)(1)(B), and this does not prevent the Chapter 13 Trustee from requesting by any authorized means, including but not limited to motion, that the Debtor supply further information. And it is further

**ORDERED** that the Clerk is directed to serve a copy of this Order on Debtor, the attorney for the Debtor, the Chapter 13 Trustee, and all parties on the mailing matrix.